# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| JOE PENTACOST, JR., AND CHARLOTTE PENTACOST | CIVIL ACTION NO. 2:19-cv-0592 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA AND HOMEFIRST AGENCY, INC. | MAG. JUDGE KATHLEEN KAY |

## RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 15] filed by Defendants American Bankers Insurance Company ("American Bankers") and HomeFirst Agency, Inc. ("HFA"). Defendants move for summary judgment on Plaintiffs Joe Pentacost, Jr., and Charlotte Pentacost's claims for bad faith damages, including their claim for Mr. Pentacost's personal injuries and Mrs. Pentacost's derivative loss of consortium claim. Plaintiffs oppose summary judgment.

For the following reasons, Defendants' Motion for Partial Summary Judgment is GRANTED, and Plaintiffs' claims for bad faith damages are DISMISSED WITH PREJUDICE.

### I.  FACTS

American Bankers issued Homeowners Plus Program Policy No. 21H0018773 ("the Policy") to Mr. Pentacost with coverage for insured property located at 109 S. Green Street, DeQuincy, Louisiana 70633, according to its terms. The Policy limits are $66,870.00 for damages sustained to the insured dwelling, $6,700.00 for outbuildings/adjacent structures, and $26,800.00 for personal effects.

On or about December 20, 2017, a windstorm occurred, damaging the Pentacosts' manufactured home and property. The Pentacosts reported the claim, and it was assigned Claim No. 201731370. On or about the same date, American Bankers sent a request to Mr. Pentacost for a Personal Effects Summary Sheet to be returned by January 3, 2018, listing "each damaged item along with the original date and place of purchase, and proof of ownership." [Doc. No. 15-8, Exh. O].

HFA managed the claim for American Bankers. HFA retained adjuster Kevin Ferguson of Cross Country Adjusting. On December 27, 2017, Mr. Ferguson inspected the property. He issued a report and estimate two days later, on December 29, 2017. Mr. Ferguson estimated repairs in the amount of $18,021.54, including a full roof replacement and repairs to the ceilings of the home for water damage.

HFA reviewed the report and estimate and requested a modification for unrepaired damage from previous Claim No. 201204249, with a date of loss of March 20, 2012. On January 11, 2018, Mr. Ferguson submitted an amended report and estimate, deleting sheetrock repairs to the ceiling in the hallway and utility room because this damage was documented in the Pentacosts' 2012 claim and had not been repaired. The amended estimate was for $17,832.37, a reduction of $189.17 from the original estimate.

On or about January 9, 2018, American Bankers prepared a check for the damage to the fence and other structures for the Policy limits of $6,700.00.

On January 12, 2018, based on Mr. Ferguson's amended estimate, American Bankers paid $17,832.37. HFA's claim notes, Mr. Pentacost did not agree with "scope" of the paid claim, and he was advised to submit a contractor's estimate for supplemental damages, along with pictures and to protect the home as well. [Doc. No. 15-3, Exh. J].

Between that time and February 23, 2018, there appear to have been several calls between Mr. Pentacost and HFA.

Within two weeks of the storm, Mr. Pentacost avers that he noticed mold and mildew on his walls. By February 1, 2018, he avers that he "began feeling ill" and that he "did not have this type of illness prior to the December 20, 2017 storm." [Doc. No. 17-2, Affidavit of Joe Pentacost, Jr., ¶ 8]. He contends that "[a]s a result of the mold exposure," he was "hospitalized and required significant treatment" and that "several medical providers related to this illness . . . have informed me that the presence of mold and mildew is the likely cause of my illness." *Id.* at ¶ 9. He claims that he now has "to use an oxygen tank to assist . . . with breathing." *Id.*

On or about January 30, 2018, according to claim notes, it appears that Mr. Pentacost advised HFA of damage to his walls from water, and the adjuster then advised him to submit estimate and pictures for additional damages.

On February 8, 2018, Defendants again requested that the Pentacosts submit a Personal Effects Summary Sheet by February 22, 2018. The Pentacosts did not do so and have not done so since.

The Pentacosts retained Landry's Construction to repair the insured property. The Pentacosts' receipts and invoices show that Landry's Construction commenced repairs on or about February 2, 2018, and concluded on or about April 1, 2018. However, these receipts and invoices were not provided to Defendants at that time.

In March 2018, the Pentacosts had "an issue with the [air conditioning] unit the first time [they] attempted use the unit following the storm." [Doc. No. 17-2, Pentacost Aff., ¶ 5]. Copies of invoices from the air conditioning repair person indicated that "the unit had been slid over far enough to break the seal." [Doc. No. 17-3; Doc. No. 17-2, Pentacost Aff., ¶ 5]. Mr. Pentacost

claims the repair person "related" the movement of the unit to the storm. [Doc. No. 17-2, Pentacost Aff., ¶ 5]. No such relation is noted on the invoices.

On October 22, 2018, the Pentacosts reported a new claim, Claim No. 201827206, with a stated loss date of July 3, 2018, relating to the floor being soft. On November 4, 2018, adjuster Timothy Ste. Marie of Cross Country Adjusting inspected the property. At that time, the Pentacosts claimed the floors were saturated during the December 2017 windstorm which caused them to become soft and buckle. However, Mr. Ste. Marie determined that "exposed insulation to underbelly" allowed condensation to form, which caused the sub-floor to become soft and buckle over time.

On or about November 20, 2018, HFA received a telephone call from Mr. Pentecost indicating that the damages to the interior of his home should have been covered because there was a hole in the roof that Mr. Ferguson never saw.

On or about November 26, 2018, Mr. Pentacost emailed HFA and ostensibly attached photographs[1] "of the damage to our roof which I don't believe that anyone there has seen." [Doc. No. 17-5]. He also allegedly attached photographs of black mold in his home. Mr. Pentacost also emailed "Tim," presumably Mr. Ste. Marie on the same day, again asserting that the water from the storm damaged the wall and ceilings in his home. *Id.*

On December 14, 2018, Defendants denied the second claim.

On December 19, 2018, the Pentacosts brought suit against Defendants in the Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana. The Pentacosts alleged that Defendants failed to "take substantial and affirmative steps to initiate the adequate loss

---

[1] The photographs were not provided.

adjustment of the claim within thirty days of notification of loss." [Doc. No. 1-1, Petition, ¶ 7]. The Pentacosts further alleged that Defendants failed to compensate Mr. Pentacost of the full amount of his property damage and that the property damage was "aggravated" by this failure, resulting in "additional property damage and medical expenses related thereto." [Doc. No. 1-1, Petition, ¶¶ 8-9]. The Pentacosts asserted claims for wrongful failure to pay all sums due or, alternatively, wrongful denial of the claim within the time provisions of La. Rev. Stat. §§ 22:1892 and 22:1973. They also asserted claims for breach of contract, contending that Defendants denied the insurance coverage in an arbitrary and capricious manner and without probable cause and that Defendants acted without reasonable basis or justification and in contravention of their duty of good faith and fair dealing. [Doc. No. 1-1, Petition, ¶¶ 10-12].

In addition to property damages, Mr. Pentacost asserts claims for medical expenses, loss of enjoyment of life, physical pain and suffering, inconvenience and aggravation, and mental anguish and emotional damages. Mrs. Pentacost asserts a loss of consortium claim. They also request attorneys' fees and penalties.

In their April 12, 2019 discovery requests, the Pentacosts produced (1) an undated "Bid for Roof and Interior room repair" prepared by Landry's Construction and (2) receipts and invoices in the total amount of $28,094.67 for the February to April 2018 repairs. However, the Pentacosts had not disclosed their repair costs until they did so during discovery approximately one year after the repairs were completed. The repair costs include an upgrade to a metal roof and charges in the amount of $2,530.63 related to the air conditioning system.

On May 8, 2019, American Bankers, with consent of HFA, removed the case to this Court based on diversity jurisdiction. In their Notice of Removal, American Bankers asserted

that it did not have notice that the jurisdictional amount was met until the April 12, 2019 discovery responses.

On September 6, 2019, American Bankers paid an additional $9,762.30 on the dwelling repairs based on documentation produced in discovery without any deduction for the metal roof upgrade or the repairs to the air conditioning system. American Bankers arrived at this sum by deducting from the repair cost of $28,094.67 the amount previously paid of $17,832.37 and the $500 deductible for a resulting payment of $9,762.30.

To date, American Bankers has paid $27,594.67 on the dwelling coverage and Policy limits in the amount of $6,700.00 for repairs to a fence and shed based on the outbuildings/adjacent coverage.

On September 6, 2019, Defendants also filed the instant motion, seeking dismissal of the Pentacosts bad faith damages, including Mr. Pentacost's personal injury damages and Mrs. Pentacost's loss of consortium claim. The motion is fully briefed, and the Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.*

### B. Bad Faith Penalties and Damages

Under Louisiana law, a plaintiff may recover bad faith penalties from insurers who fail to pay legitimate claims under two provisions. Under the first provision, LA. REV. STAT. § 22:1892(A)(1), "all insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." If an insurer refuses to pay a claim within 30 days of receiving satisfactory proof of loss, and its failure to do so is found to be "arbitrary, capricious, or without probable cause," then LA. REV. STAT. § 22:1892(B)(1) provides that the insurer is subject to pay a penalty equal to 50% of the loss, or one thousand dollars, whichever is greater. The second provision, LA. REV. STAT. § 22:1973(B)(5), requires an insurer to pay "the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant. If it fails to do so and "such failure is arbitrary, capricious, or without probable cause," LA. REV.

7

STAT. § 22:1973(B)(5), then the insurer may be required to pay penalties "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La. Rev. Stat. § 22:1973(C). "A plaintiff may be awarded penalties under only one of the two statutes, whichever is greater." *Dickerson v. Lexington Insurance Co.*, 556 F.3d 290, 297 (5th Cir. 2009). However, a plaintiff may recover attorneys' fees under Section 1892 while seeking damages and penalties under Section 1973. *Id.*

Section 1973 also imposes on an insurer a duty of "good faith and fair dealing," including the "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." If an insurer breaches any one of the six (6) duties enumerated in the statute, it shall "be liable for any damages sustained as a result of the breach," i.e., consequential damages. *See* La. Rev. Stat. § 22:1973 (A); *see also Burke v. Lafayette Ins. Co.*, 2011-0755, 2012 WL 4759822, at *9 (La. App. 4 Cir. 4/18/12); La. Rev. Stat. § 22:1973(C) ("In addition to any general or special damages to which a claim is entitled for the breach of the imposed duty, the claimant may be awarded penalties . . . ."). One of the six enumerated duties is the duty "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss." LA. REV. STAT. 22:1973(B)(5).

### 1. Statutory Penalties and Damages

In this matter, the Pentacosts' claims for bad faith penalties and damages all flow from Defendants' failure to pay the entire amount of the claim within the specified deadlines. To establish entitlement to statutory penalties and damages for untimely payments under the Louisiana bad faith statutes, the insured has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) the insurer's failure to pay was arbitrary, capricious, or without probable cause. *See Dickerson*, 556 F.3d at 297; *La.*

*Bag Co., Inc. v. Audubon Indem. Co.*, 08–0453, pp. 11–12 (La.12/2/08), 999 So.2d 1104, 1112–13; *Citadel Broad. Corp. v. Axis U.S. Ins. Co.*, 2014-0326 (La. App. 4 Cir. 2/11/15), 162 So. 3d 470, 476, writ denied, 2015-0514 (La. 5/15/15), 170 So. 3d 969 (citing *La. Bag.*).

"Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Reed v. State Farm Mut. Auto Ins. Co.*, 2003-0107 (La. 10/21/2003); 857 So.2d 1012, 1021. An insurer acts arbitrarily, capriciously, or without probable cause when the "insurer knowingly commit[s] actions which [are] completely unjustified, without reasonable or probable cause or excuse." *Holt v. Aetna Cas. & Sur. Co.*, 28450–CA, p. 18 (La. App. 2d. Cir. 9/3/96); 680 So.2d 117, 130. "[S]tatutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on the defense." *Reed*, 857 So.2d at 1021; *see also Kodrin v. State Farm Fire & Cas. Co.,* 314 Fed. App'x. 671, 679 (5th Cir.2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of loss.").

In this matter, the Pentacosts submitted two claims related to the December 20, 2017 windstorm damage: (1) the December 21, 2017 Claim No. 201731370 and (2) the October 22, 2018 Claim No. 201827206.

With regard to Claim No. 201731370, the Pentacosts reported the claim on December 21, 2017; the adjuster, Mr. Ferguson inspected the property within six days on December 27, 2017; and American Bankers paid the full amount of Mr. Ferguson's estimate of $17,832.37 on or about January 12, 2018,[2] the day after he produced that estimate. Around that same time, American Bankers also paid Policy limits for outbuildings and adjacent structures of $6,700.00.

---

[2] The check is dated January 11, 2018, but appears to have been mailed the following day, according to HFA's claim notes. [Doc. No. 1-3, Exh. C; Doc. No. 15-3, Exh. J].

The Pentacosts deny that this payment was full satisfaction of their damages from the windstorm. To the extent that Defendants relied on Mr. Ferguson's estimate, the Pentacosts contend that he spent less than an hour on the property. He did climb on their roof and take photographs, but the Pentacosts criticize his adjustment because he did not look under the tarp or asked questions about the extent of the damage to the roof. [Doc. No. 17-2, Exh. A, Affidavit of Joe Pentacost, Jr., ¶ 4].

However, at the time that American Bankers issued the payments, the information available to it was the report from Mr. Ferguson, as well as its own prior claim file on Mr. Pentacost's 2012 claim. Whether Mr. Ferguson looked under the tarp is irrelevant because his estimate included a full roof replacement. The only adjustment to his original estimate, at Defendants' request for review, was a standard reduction for a prior paid claim for repair to the hall and utility room area that had not been made. Additionally, Mr. Ferguson inspected the interior of the home, and his report indicates that the estimate included repairs to the ceilings and replacement of electrical outlets for water damage. Neither Mr. Pentacost's affidavit nor the other evidence relied upon creates a genuine issue of material fact for trial that Defendants' January 2018 payments based on this estimate were arbitrary, capricious, or lacked probable cause.

Between January 3, 2018, when the mold and mildew allegedly appeared, according to Mr. Pentacost's timeline and January 12, 2018, when American Bankers issued a check, there is no evidence in this case that Defendants had received satisfactory proof of additional loss based on the mold and mildew on the walls.

Next, the Pentacosts contend that there were issues with their air conditioning unit and floors that were caused by the windstorm and for which they should have received timely

payment. As the Pentacosts admit, they did not discover any issue with their air conditioning unit until its first spring use in March 2018, but attribute the sliding of the unit to the storm. Mr. Pentacost further avers that the floors were not buckled prior to the storm, but now contend that the storm caused significant amounts of water to come into the home, and the floors to buckle. [Doc. No. 17-2, Exh. A, Pentacost Aff., ¶ 7]. However, by Mr. Pentacost's own report, the issue with the floors did not develop until July 2018. Certainly, none of this evidence is sufficient to show that, at the time American Bankers issued the first payments, it acted in bad faith.

The Court must also consider whether subsequent losses were reported, and Defendants acted in bad faith in denying payment for those losses. First, with regard to the air conditioning unit, Mr. Pentacost avers that he "promptly notified" Defendants of the damage, but was not compensated until September 6, 2019. [Doc. No. 17-2, Exh. A, Pentacost Aff., ¶ 5]. Defendants contend that they were not provided any receipts or invoices until the receipt of discovery in this lawsuit April 2019.

The Court finds that the evidence is insufficient to show that Defendants acted arbitrarily, capriciously, or without probable cause on this basis either. Notably, there is no factual dispute between the parties because Mr. Pentacost does not aver that he provided the receipts in March-May 2018, only that he "notified" Defendants of the damage. Regardless, even if Mr. Pentacost intended to aver that he provided the invoices, the invoices do not create a fact issue either. Nothing on the face of the invoices attributes the damage to the 2017 windstorm as the Pentacosts argue, and, thus, Mr. Pentacost's hearsay report that the repair person "related" the damage to the windstorm is not supported by the documentation. Whether Mr. Pentacost merely notified Defendants of his concern with the air conditioning unit or actually provided the invoices, Defendants were not presented with satisfactory proof that the air conditioning issue

was a loss connected to the December 2017 windstorm. The Court's concern, at this point, is only whether Defendants acted in bad faith in failing to pay these amounts prior to September 2019, and this evidence is insufficient to raise a genuine issue of material fact for trial that Defendants acted in bad faith.

With regard to the flooring, it was not until October 22, 2018, that Mr. Pentacost reported a new claim, contending that floor damage at the insured property was due to the windstorm that occurred on December 20, 2017. According to that claim, the date of loss was July 2018. Mr. Pentacost does not contend that the floors were soft or buckled before that time. Further, when the claim was made on October 22, 2018, Defendants again timely sent an adjuster, Mr. Ste. Marie, who inspected the floors and home on November 4, 2018. He determined that the loss was caused by exposed insulation under the house, which caused condensation to form, damaging the floor. The Pentacosts did not submit any evidence or documentation to refute Mr. Ste. Marie's conclusion that the floor damage is not insured, and even now, they have not produced evidence to the contrary. Under these facts, the Pentacosts have failed to produce a genuine issue of material fact for trial that Defendants acted in bad faith in failing to pay for the floor damage.

Finally, Mr. Pentacost contends that Defendants acted in bad faith with regard to the mold and mildew damage on his walls and that he is entitled to consequential damages under LA. REV. STAT. § 22:1973 for his allegedly resulting respiratory illness. The Court has found that there is insufficient evidence to show that Defendants acted in bad faith with regard to the January 12, 2018 payment, but the Pentacosts appear to contend that Defendants were in bad faith for failing to make timely payments after that time as well. To that extent, there is no evidence that the Pentacosts submitted a contractor's estimate, receipts or invoices between the

January 12, 2018 payment, and Mr. Pentacost's hospitalization for the allegedly related respiratory condition in April 2018. Although Mr. Pentacost's repair receipts show that the roof was installed somewhere between February and March 2018, those receipts were not provided. Thus, the Pentacosts have failed to raise a genuine issue of material fact for trial that Defendants acted in bad faith with regard to payment of loss based on mold and mildew in the walls caused by water intrusion.

In sum, Defendants have produced evidence showing that they had reasonable and rational bases for the amount of the initial payment and for denying the subsequent October 2018 claim which was actually submitted, there is no evidence that American Bankers failed to pay any amounts due within the statutory periods, and there is no evidence that American Bankers' failure to pay was arbitrary and capricious, or without probable cause. Accordingly, Defendants are entitled to summary judgment on the Pentacosts' claim for bad faith damages, penalties, and attorneys' fees.

## 2. Medical Causation and Prematurity of Defendants' Motion

The Pentacosts also disputed whether the Court should consider Defendants' Motion for Partial Summary Judgment when discovery is not complete. Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . .(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

In this case, the Pentacosts have not presented an affidavit or declaration supporting the contention that they cannot present essential facts because of the timing of this motion. While

they point out that depositions have not been taken, they have not identified what information they contend could be gained from such depositions.

Further, the discovery deadline is set to close on November 26, 2019, and the Pentacosts have not moved the Court to extend that deadline or to supplement its briefing with additional discovery obtained since Defendants' reply memorandum was filed one month ago.

Finally, even if the Pentacosts could raise a genuine issue of material fact for trial on their bad faith claims, the burden is on the plaintiff to establish causation for his damages. The presumption set forth in *Housely v. Cerise,* 579 So.2d 973 (La. 1991) does not provide otherwise. The *Housely* presumption is as follows:

> A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Id.* at 980 (quoting *Lucas v. Ins. Co. of N. Am.*, 342 So.2d 591 (La. 1977)).

In this case, Mr. Pentacost was not a person who was in good health and then developed some condition after an accident. The medical records he presents show (and he admits) that he had long suffered from COPD, a respiratory condition, and further indicate exposure to Agent Orange, prior pneumonia, as well as other health conditions. Further, there is no acute "accident" that occurred on a certain date. Rather, Mr. Pentacost avers that the mold and mildew formed within two weeks of the windstorm, and he was experiencing illness approximately one month later. This is not the type of factual scenario to which the *Housely* presumption applies.

The Pentacosts are correct that a defendant may be liable for the aggravation of a pre-existing condition, but that correct statement of law does not alleviate their burden of proof. Unless a medical matter is within common knowledge, a plaintiff must show by a preponderance

14

of the evidence that Defendants' actions (or inactions) more probably than not caused Mr. Pentacost's respiratory illnesses or conditions or aggravated a pre-existing condition. *See Lasha v. Olin Corp.,* 625 So.2d 1002, 1005 (La. 1993); *see also Chavers v. Travis*, 2004-0992 (La. App. 4 Cir. 4/20/05); 902 So.2d 389, 395.[3] While Mr. Pentacost avers that he has treated with "several medical providers . . . who have informed me that the presence of mold and mildew is likely the cause of my illness[,]" [Doc. No. 17-2, Pentacost Aff., ¶ 9], this statement is clear hearsay. *See* FED. R. EVID. 801 AND 802. The Pentacosts cannot rely on hearsay to raise a genuine issue of material fact for trial that Mr. Pentacost's exposure to mold and mildew in his home were the cause-in-fact of the respiratory conditions for which he sought medical treatment on the dates alleged. Additionally, presentation of medical records alone without any interpretation by a medical provider will not suffice under the facts of this case. Mr. Pentacost could have obtained an affidavit or declaration from a medical provider, or he could have retained an expert.[4] He did not do so. Thus, for these additional reasons, summary judgment on the Pentacosts' bad faith claims is appropriate at this time.

### III. CONCLUSION

Based on the foregoing, Defendants' Motion for Partial Summary Judgment [Doc. No. 15] is GRANTED, and the Pentacosts' bad faith claims for damages (including Mr. Pentacost's personal injuries damages claim and Mrs. Pentacost's loss of consortium claim), penalties, and attorneys' fees are DISMISSED WITH PREJUDICE.

---

[3]Although *Chavers* involved an "accident" rather than exposure to an alleged environmental cause, its principle applies: "Differentiating between damages caused by an accident and damages caused by normal progression of a plaintiff's pre-existing condition often presents complex legal and medical issues." 902 So.2d at 395.

[4]The Pentacosts' deadline for providing expert reports to Defendants was November 8, 2019. [Doc. No. 14]. No report has been provided to the Court to support his claim for personal injury damages and to oppose the instant Motion for Partial Summary Judgment.

MONROE, LOUISIANA, this 21st day of November, 2019.

                                                                                          _____
                                                                                             TERRY A. DOUGHTY
                                                                     UNITED STATES DISTRICT JUDGE