# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| JOE PENTACOST, JR., AND CHARLOTTE PENTACOST | CIVIL ACTION NO. 2:19-cv-0592 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA AND HOMEFIRST AGENCY, INC. | MAG. JUDGE KATHLEEN KAY |

## RULING

This is a dispute over homeowner's insurance benefits. Pending before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by Defendants American Bankers Insurance Company ("American Bankers") and HomeFirst Agency, Inc. ("HFA"). Defendants move for summary judgment on Plaintiffs Joe Pentacost, Jr., and Charlotte Pentacost's breach of contract claims. Plaintiffs filed a memorandum in opposition to Defendants' Motion for Summary Judgment. [Doc. No. 23]. Defendants filed a reply memorandum. [Doc. No. 24].

For the following reasons, Defendants' Motion for Summary Judgment is DENIED.

## I.  FACTS

American Bankers issued Homeowners Plus Program Policy No. 21H0018773 ("the Policy") to Mr. Pentecost with coverage for insured property located at 109 S. Green Street, DeQuincy, Louisiana 70633, according to its terms. The Policy limits are $66,870.00 for damages sustained to the insured dwelling, $6,700.00 for outbuildings/adjacent structures, and $26,800.00 for personal effects.

On or about December 20, 2017, a windstorm occurred, damaging the Pentacosts' manufactured home and property. The Pentacosts reported the claim, and it was assigned Claim No. 201731370. On or about the same date, American Bankers sent a request to Mr. Pentacost for a Personal Effects Summary Sheet to be returned by January 3, 2018, listing "each damaged item along with the original date and place of purchase, and proof of ownership." [Doc. No. 15-8, Exh. O].

HFA managed the claim for American Bankers. HFA retained adjuster Kevin Ferguson of Cross Country Adjusting. On December 27, 2017, Mr. Ferguson inspected the property. He issued a report and estimate two days later, on December 29, 2017. Mr. Ferguson estimated repairs in the amount of $18,021.54, including a full roof replacement and repairs to the ceilings of the home for water damage.

HFA reviewed the report and estimate and requested a modification for unrepaired damage from previous Claim No. 201204249, with a date of loss of March 20, 2012. On January 11, 2018, Mr. Ferguson submitted an amended report and estimate, deleting sheetrock repairs to the ceiling in the hallway and utility room because this damage was documented in the Pentacosts' 2012 claim and had not been repaired. Mr. Pentecost, however, has testified that the cause of the water leak had been repaired; he just failed to re-paint. [Doc. No. 23-4, Joe Pentecost Depo., pp. 30-31]. Based on this change, the estimate was amended to $17,832.37.

On or about January 9, 2018, American Bankers prepared a check for the damage to the fence and other structures for the Policy limits of $6,700.00.

On January 12, 2018, American Bankers paid $17,832.37 to Mr. Pentecost. HFA's claim notes, Mr. Pentacost did not agree with the "scope" of the paid claim, and he was advised to submit a contractor's estimate for supplemental damages, along with pictures, and to protect

the home as well. [Doc. No. 15-3, Exh. J]. Mr. Ferguson "found that the contents inside the storage area of the rear deck had been exposed to water" at the time of his inspection, but Mr. Pentecost had not been able to determine the extent of the damage at the time. [Doc. No. 21-2, Ferguson Aff., ¶ 14].

On or about January 30, 2018, according to claim notes, Mr. Pentacost advised HFA of damage to his walls from water, and the adjuster then advised him to submit estimate and pictures for additional damages. Mr. Ferguson had found that the electrical outlets had to be replaced because of water damage.

On February 8, 2018, Defendants again requested that the Pentacosts submit a Personal Effects Summary Sheet by February 22, 2018. The Pentacosts did not do so at that time.

Between the time that payment on Mr. Ferguson's estimate issued and February 23, 2018, there were several calls between Mr. Pentacost and HFA.

The Pentacosts retained Landry's Construction to repair the insured property. The Pentacosts' receipts and invoices show that Landry's Construction commenced repairs on or about February 2, 2018, and concluded on or about April 1, 2018.

In March 2018, the Pentacosts had "an issue with the [air conditioning] unit the first time [they] attempted use the unit following the storm." [Doc. No. 17-2, Pentacost Aff., ¶ 5]. Copies of invoices from the air conditioning repair person indicated that "the unit had been slid over far enough to break the seal." [Doc. No. 17-3; Doc. No. 17-2, Pentacost Aff., ¶ 5]. Mr. Pentacost claims the repair person "related" the movement of the unit to the storm. [Doc. No. 17-2, Pentacost Aff., ¶ 5]. No such relation was noted on the invoices.

On October 22, 2018, the Pentacosts reported a new claim, Claim No. 201827206, with a stated loss date of July 3, 2018, relating to the floor being soft. On November 4, 2018, adjuster

3

Timothy Ste. Marie of Cross Country Adjusting inspected the property. At that time, the Pentacosts claimed the floors were saturated during the December 2017 windstorm which caused them to become soft and buckle. However, Mr. Ste. Marie determined that "exposed insulation to underbelly" allowed condensation to form, which caused the sub-floor to become soft and buckle over time.

On or about November 20, 2018, HFA received a telephone call from Mr. Pentecost indicating that the damages to the interior of his home should have been covered because there was a hole in the roof that Mr. Ferguson never saw.

On or about November 26, 2018, Mr. Pentacost emailed HFA and ostensibly attached photographs[1] "of the damage to our roof which I don't believe that anyone there has seen." [Doc. No. 17-5]. He also allegedly attached photographs of black mold in his home. Mr. Pentacost also emailed "Tim," presumably Mr. Ste. Marie on the same day, again asserting that the water from the storm damaged the wall and ceilings in his home. *Id.*

On December 14, 2018, Defendants denied the second claim.

On December 19, 2018, the Pentacosts brought suit against Defendants in the Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana. The Pentacosts alleged that Defendants failed to "take substantial and affirmative steps to initiate the adequate loss adjustment of the claim within thirty days of notification of loss." [Doc. No. 1-1, Petition, ¶ 7]. The Pentacosts further alleged that Defendants failed to compensate Mr. Pentacost of the full amount of his property damage and that the property damage was "aggravated" by this failure, resulting in "additional property damage and medical expenses related thereto." [Doc. No. 1-1,

---

[1] The photographs were not provided.

Petition, ¶¶ 8-9]. The Pentacosts asserted claims for wrongful failure to pay all sums due or, alternatively, wrongful denial of the claim within the time provisions of La. Rev. Stat. §§ 22:1892 and 22:1973. They also asserted claims for breach of contract, contending that Defendants denied the insurance coverage in an arbitrary and capricious manner and without probable cause and that Defendants acted without reasonable basis or justification and in contravention of their duty of good faith and fair dealing. [Doc. No. 1-1, Petition, ¶¶ 10-12].

In addition to property damages, Mr. Pentacost asserted claims for medical expenses, loss of enjoyment of life, physical pain and suffering, inconvenience and aggravation, and mental anguish and emotional damages. Mrs. Pentacost asserted a loss of consortium claim. They also requested attorneys' fees and penalties.

In their April 12, 2019 discovery requests, the Pentacosts produced (1) an undated "Bid for Roof and Interior room repair" prepared by Landry's Construction and (2) receipts and invoices in the total amount of $28,094.67 for the February to April 2018 repairs. The repair costs include an upgrade to a metal roof and charges in the amount of $2,530.63 related to the air conditioning system.

On May 8, 2019, American Bankers, with consent of HFA, removed the case to this Court based on diversity jurisdiction. In their Notice of Removal, American Bankers asserted that it did not have notice that the jurisdictional amount was met until the April 12, 2019 discovery responses.

On September 6, 2019, American Bankers paid an additional $9,762.30 on the dwelling repairs based on documentation produced in discovery without any deduction for the metal roof upgrade or the repairs to the air conditioning system. American Bankers arrived at this sum by

deducting from the repair cost of $28,094.67 the amount previously paid of $17,832.37 and the $500 deductible for a resulting payment of $9,762.30.

On September 6, 2019, Defendants filed a Motion for Partial Summary Judgment, seeking dismissal of the Pentacosts' bad faith damages, including Mr. Pentacost's personal injury damages and Mrs. Pentacost's loss of consortium claim. After the motion was fully briefed, the Court ruled, granting the Motion for Partial Summary Judgment and dismissing Plaintiffs' claims for bad faith damages, including the personal injury and loss of consortium claims, and attorneys' fees. Plaintiffs' breach of contract claims remain pending.

On January 8, 2020, Defendants filed the instant Motion for Summary Judgment on Plaintiffs' remaining claims. [Doc. No. 21]. On January 30, 2020, Plaintiffs filed a memorandum in opposition to the motion [Doc. No. 23] and attached an affidavit from Jared Landry, their contractor; their own deposition testimony; receipts for a lawn mower and living room furniture; and an affidavit from Mr. Pentecost previously provided to the Court. On February 6, 2020, Defendants filed a reply. [Doc. No. 24]. The Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.*

**B.    Breach of Insurance Contract**

As a federal court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state. *See, e.g., Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Under Louisiana law, insurance policies are construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03); 848 So. 2d 577, 580. When the language of a policy is clear and unambiguous, an insurance contract must be enforced as written. When the wording is clear, courts lack the authority to alter or change the terms of the policy under the guise of interpretation. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So. 2d 759 (La. 1994).

In interpreting insurance contracts the judicial responsibility is to determine the parties' common intent according to the ordinary, plain and popular meaning of words used in a policy. LOUISIANA CIVIL CODE, ARTS. 2045 and 2047; *Breland v. Schilling*, 550 So. 2d 609 (La. 1989). Words and phrases used in an insurance policy are to be construed using their plain ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. LOUISIANA CIVIL CODE, ART. 2047; *Peterson v. Schimek*, 729 So. 2d 1024, 1028-29 (La. 1999).

The insurance policy at issue provides that American Bankers must pay for "direct, sudden, and accidental" loss or damage to covered property, except for excluded causes of loss. [Doc. No. 1-2, Policy, pp. 11-12]. Coverage exclusions include damage caused by wear and tear, neglect, long term water intrusion, the presence of condensation or humidity over a longer period of time, and faulty, inadequate, or defective construction or maintenance of the insured property. *Id.* at p. 15.

In this case, it is undisputed that American Bankers has paid the submitted construction costs of $28,221.17, minus a $500 deductible and excluding a $127.50 charge to move the air conditioning thermostat to a new location, for a total of $27,594.67. American Bankers also paid policy limits of $6,700.00 for the fence and appurtenances. However, the parties dispute whether American Bankers is liable for additional damages for personal effects and for water damage to the home. The Court considers each of these arguments in turn.

1. **Personal Effects**

With regard to personal property, the Policy provides that, "[i]n case of a loss," the insured has the duty to "prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of the loss. Attach to the inventory all

bills, receipts and related documents that substantiate the figures in the inventory." [Doc. No. 1-2, Policy, p. 16].

An insured's failure to cooperate in the insurer's investigation may result in exclusion of coverage, but only if the failure is material and prejudicial. *See Williams v. Lowe*, 831 So.2d 334, 336 (La. App. 5 Cir. 2002) (citing *Desadier v. Safeway Ins. Co.*, 712 Fo.2d 925 (La. App. 3 Cir. 1998)). However,

> It must be made clear, however, that a cooperation clause is emphatically not an escape hatch that an insurer may use to flee from liability. It is most certainly not the law of Louisiana that any failure to comply with the policy conditions, no matter how trivial, will relieve an insurer from liability under the policy it drafted and issued. On the contrary, a pre-trial finding that an insured breached a cooperation clause and that an insurer is not liable is "a draconian remedy which [courts] do not ordinarily favor."

*Jackson v. State Farm Fire & Cas. Co.*, No. CIV.A. 06-7202 R, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010) (quoting *Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 685(La. App. 4. Cir. 10/15/92)).

Defendants argue that they requested Plaintiffs provide a Personal Effects Summary Sheet on multiple occasions, and Plaintiffs never responded. They argue further that Plaintiffs have failed to show that American Bankers is responsible for any policy benefits on their personal effects claim. Finally, even if they were otherwise liable, American Bankers argues that Plaintiffs have failed to show that the total amount it has paid to date ($34,294.67) is insufficient to cover all of their covered losses related to the storm.

Plaintiffs respond that Mr. Pentecost spoke several times to the adjuster concerning the loss of personal effects and have provided extensive testimony and documentation supporting their losses. Since their depositions, Plaintiffs have provided receipts to support their claim for the replacement of a lawn mower and living room furniture. While there were additional

9

personal effects lost, Mr. Pentecost explained that the receipts for those items were located in a filing cabinet in his living room which was salvageable.  Included in these losses were a barbeque pit and Black and Decker tools.   Additionally, Mr. Pentecost contends that he did, in fact, submit the form requested, and points to records of a October 22, 2018 telephone conversation in support.  Finally, Plaintiffs point to equitable considerations in that Mr. Pentecost admitted that he had difficulty determining the breakdown of what American Bankers had paid and that the letters sent by Defendants were on the day of the incident and at another time when Mr. Pentacost was hospitalized.

Defendants respond that Plaintiffs have failed to establish a foundation to support the documents offered and that their evidence is untimely and inadequate.

The Court disagrees.  The Court finds that Plaintiffs have raised a genuine issue of material fact for trial as to the amount owed for losses related to their personal effects.  This is not a case where the insured made no efforts at all and dismissal of their claims is appropriate.  Further, Plaintiffs will have the opportunity to lay a foundation for the receipts at trial.  *See Celotex*, 477 U.S. at 324 (regarding hearsay evidence, the non-moving party is not required "to produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see also Lee vs. Offshore Logistical & Transp., LLC*, 859 F.3rd 353, 354 (5th Cir. 2017) (unsworn statements may be competent summary judgment evidence even if they are presented in a form that would not be admissible form at trial).  While Defendants' adjuster, Mr. Ferguson, did not document losses to furniture initially, Plaintiffs can offer testimony at trial relative to causation.  To the extent that Defendants contend that they have, in effect, overpaid the claim by paying for an air conditioning unit that they should not have, the Court finds that argument to be more appropriate as an adjustment to damages which the Court may consider at

trial. Accordingly, Defendants' Motion for Summary Judgment is DENIED as to this claim, subject to their right to raise objections at trial.

### 2. Losses Related to Water Damage

Defendants also move for summary judgment on Plaintiffs' claims related to water damage to their floors following the windstorm. They contend that Plaintiffs have failed to provide sufficient evidence that this loss was caused by the windstorm.

Plaintiffs respond, citing to their own deposition testimony, and support their response further with an affidavit from Jared Landry, a contractor who inspected their home within two weeks of the storm and who performed the repairs on their home. They point out that they can testify to the amount of water that poured into their home as a result of the storm and that they mopped for a week following the storm. They also point out that there is a December 21, 2017 recorded call from Mr. Pentecost in which he recounts the water leaking into the guest bedroom, the utility room, the living room, hallway, and bathroom. Mr. Landry supports this testimony as well in his affidavit. [Doc. No. 23-3]. They argue that Mr. Landry can testify about the repairs to the home and that, contrary, to the inspection performed by Mr. Ste. Marie, the floor damage was caused by the storm.

Defendants respond, however, that Mr. Landry was not timely disclosed by Plaintiffs as a non-retained expert, that his opinion is not reliable, and, therefore, his testimony should be excluded. *See* FED. RS. CIV. P. 26(a)(2)(C); 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court . . . may . . . "impose other appropriate sanctions. . . ."); *see also* FED. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill,

experience, training, or education may testify in the form of an opinion or otherwise if . . . (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; . . . (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.).

While Defendants have been aware that Landry Construction performed the repairs to the home, it does not appear that Mr. Landry was identified as an expert witness, as well as a fact witness, until the fall of 2019. The Court has considered whether his late identification has prejudiced Defendants and whether such prejudice can be cured. The Court finds that it can. The Court will re-open discovery for a 30-day period for the limited purpose of allowing Defendants to depose Mr. Landry. If Defendants feel that a continuance or other relief is also necessary to cure any prejudice to them, they should file the appropriate motion.

As to the reliability of Mr. Landry's testimony, the Court finds that he is qualified by experience and skill to testify about construction, this particular job, and his observations. Defendants will then have the opportunity to challenge his testimony on cross-examination. Therefore, Defendants' Motion for Summary Judgment is DENIED on this basis as well.

## III. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. No. 21] is DENIED. However, the Court has re-opened the discovery deadline for the limited purpose of allowing Defendants to depose Jared Landry if they wish to do so. If Defendants contend that they need either further relief from the Scheduling Order deadlines or a continuance, they should file

the appropriate motion.

MONROE, LOUISIANA, this 11th day of February, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE